Original
No. SMC-93-016

IN THE MATTER OF UNNAMED ATTORNEY
AND UNNAMED TITLE COMPANY

July 27, 1994

*Boutin & Solomon, P.A.*, of Londonderry (*Edmund J. Boutin* on the brief and orally), for the committee on professional conduct.

*Boynton, Waldron, Doleac, Woodman & Scott, P.A.*, of Portsmouth (*Ralph R. Woodman, Jr.* on the brief and orally), for the respondents.

*Mulhern & Scott, P.A.*, of Portsmouth (*Peter C. Scott* on the brief), by brief as *amicus curiae*.

*Law Offices of William B. Parnell, P.C.*, of Londonderry (*William B. Parnell* on the brief), by brief as *amicus curiae*.

*Douglas & Douglas*, of Concord (*Charles G. Douglas, III* and *C. Kevin Leonard* on the brief), by brief for New Hampshire Association of Title Companies, as *amicus curiae*.

JOHNSON, J.   This is a petition filed by the committee on professional conduct (committee) for an accounting pursuant to Supreme Court Rule 50-A(4). The committee, pursuant to their authority to conduct audits of attorneys on a random basis, wishes to inspect the trust accounts of an incorporated title closing company (the corporation) that is largely owned by a New Hampshire attorney (the respondent). The issue is whether the New Hampshire Rules of Professional Conduct and the Supreme Court Rules require the corporation and the respondent to submit to such an audit. *See* SUP. CT. R. 50, 50-A; N.H. R. PROF. CONDUCT 1.15. Based on the facts presented to us, we hold that the corporation's financial records are subject to audit.

The following is the parties' agreed statement of facts, with citations omitted:

> "The Unnamed Attorney (hereinafter 'the Respondent')
> became a member of the New Hampshire Bar in 1975. He
> maintains an active law practice in one of New Hampshire's

cities. Unnamed Title Services, Inc. (hereinafter 'the Corporation') is a New Hampshire corporation, formed in 1984. There are 300 shares of common stock of the Corporation issued and outstanding: 220 issued to Respondent and 80 issued to Respondent's spouse, (a non-Lawyer), who is the Corporation's President and Treasurer. Respondent is the Secretary of the Corporation. Respondent and Respondent's spouse are the only two members of the Board of Directors.

In 1993 the Corporation handled approximately 100 closings for approximately 7 customers, including 6 banks and 1 mortgage company. The typical transaction would begin with an individual applying to a bank for a mortgage loan (either for an initial mortgage or a refinance); that application being accepted by the bank; and the bank sending a requisition form to the Corporation, requesting that the Corporation perform certain services for the bank.

The Corporation serves as an agent of the bank. It bills the bank for its services on a predetermined fee basis. The fee of the Corporation to the bank is paid by the borrower, similar to the borrower being responsible for appraisal fees, environmental assessment costs, etc. of other third party vendors providing closing related services to the bank. The essential services which the Corporation provides to the bank are as follows: (a) a title search at the Registry of Deeds, (b) preparation of numerous bank documents (mortgage deed, settlement statement, etc[.]), (c) procurement of title insurance for the bank and, if requested, title insurance for the mortgagor, (d) supervision of closing and disbursement of settlement funds in accordance with the settlement statement.

The Corporation bills for its services on the settlement statement as a 'settlement or closing fee.' On an infrequent basis, the borrower may ask Respondent to perform a legal service which is associated with the closing, such as to prepare a deed. Such legal services are billed separately as a legal service on the settlement statement. Any fee for such legal services of Respondent or other Attorneys retained by borrower is collected by the Corporation at closing and disbursed to the Respondent or such other Attorney. The bank transfers the settlement funds to the Corporation which dis-

burses the funds, together with any additional monies which might be needed from the borrower to effectuate the closing. Funds are disbursed in accordance with the bank's instructions and a permanent record of disbursement is retained by the Corporation.

The Corporation and Respondent share office space. The Corporation has a separate operating bank account, a separate escrow disbursement bank account and separate equipment from the law offices of Respondent. Respondent's spouse serves as the operating manager of the business of the Corporation.

In 1993, Respondent performed no legal services for the Corporation. There is no stipulation as to whether Respondent provided legal services to the Corporation in prior years. The Corporation had no full time employees in 1993. Five (5) people worked for the Corporation in 1993, doing such things as file preparation, abstracting, preparing documents, and supervising the closings. These same five (5) people are considered employees of Respondent's law practice, a sole proprietorship.

In 1993, approximately 20% of these individuals' time was spent working for the Corporation and 80% working for Respondent. Respondent had two (2) additional employees who worked exclusively for him in 1993. One of the employees who works for Respondent and spent approximately 20% of such employee's time working for the Corporation is a member of the New Hampshire Bar. This person reviewed title abstracts prepared by the Corporation and the cost of such services was part of the Corporation's 'settlement fee' paid by the borrower. The person who formerly performed the same services for the Corporation, currently being provided by this Attorney, was not an attorney.

The Corporation provides no written disclosure to the borrower as to the nature of its services; nor does it provide a written disclosure as to whether or not the Respondent has an ownership interest in the Corporation. This stipulation does not address whether or not borrowers are otherwise represented in the transaction, except to the extent that the Respondent is sometimes retained to draft deeds or other instruments for the borrower or Sellers whose closings are handled by the Corporation.

The Corporation maintains no malpractice or liability insurance. The bank and/or borrower rely upon Closing Protection Letters written by title insurance companies licensed in New Hampshire. These Closing Protection Letters are issued to banks but are not copied to borrowers. Borrowers receive no written disclosure of their contents. These Closing Protection Letters indemnify the bank and borrower against damage arising out of certain claims which they may encounter against the Corporation, as agent of the title insurance company. This indemnity covers claims set forth in the Closing Protection Letter and includes protection against 'Fraud and dishonesty of the Issuing Agent or Approved Attorney in handling your (the mortgagee's) funds or documents in connection with such closing.'

In the case of the Corporation, a title insurance company on whose behalf the Corporation issues title insurance policies, as its agent, has conducted an audit of the Corporation's books and escrow accounts as recently as the summer of 1993. Such audit was performed in accordance with the standards of the title insurance company set forth in its Agent Review Programs/File Audit. The title insurance companies also periodically audit the policy 'jackets' (numbered policy forms which must be accounted for) and other title insurance documentation."

■ The committee argues that Professional Conduct Rule 1.15 and Supreme Court Rules 50 and 50-A apply to the escrow accounts held by the corporation and operate to permit the accounting sought by the committee pursuant to Supreme Court Rule 50-A(4). We hold that for the committee to prevail, it must show that: (1) the committee sought to audit records of a New Hampshire lawyer; (2) the audit of the lawyer led to information that there exists financial records maintained by an entity performing services customarily performed by a lawyer; and (3) there is a substantial nexus between the New Hampshire lawyer and the entity in question so that it is reasonable that the committee be permitted to audit the entity's records. Thus, a case such as this is essentially factually driven.

■ The parties agree that the respondent is a New Hampshire attorney, who, in the course of a random audit of his or her records, was revealed to be a majority shareholder in a certain title closing corporation. It thus remains to be established whether the corpora-

tion was performing services customarily performed by a lawyer. The corporation, acting through its employees, conducts title searches, prepares closing documents such as mortgage deeds, settlement statements, etc., procures title insurance for either a bank or the mortgagor, and conducts closings of real estate contracts, including disbursing funds in accordance with settlement statements prepared by the corporation. Thus, the committee met the burden of establishing that the records sought to be audited fall under the second prong of the test set forth above.

As to the third prong of the test, the stipulated facts demonstrate that a substantial nexus exists between the lawyer and the entity. The respondent owns seventy-three percent of the corporation stock and his or her spouse owns the remaining twenty-seven percent. The respondent thus has the ability to control the annual meeting of the corporation. *See* RSA 293-A:7.01, :7.21(a) (Supp. 1993). The respondent and his or her spouse are the only members of the board of directors of the corporation. *See* RSA 293-A:8.03 (Supp. 1993). While the respondent's spouse acts as the corporation president and treasurer and serves as the operating manager of the business of the corporation, the respondent may at any time call a special meeting of the shareholders, *see* RSA 293-A:7.02(a)(2) (Supp. 1993), and the facts give no hint that the corporation by-laws prevent the respondent from removing his or her spouse as a director at such a meeting, *see* RSA 293-A:8.08 (Supp. 1993). The officers of a New Hampshire corporation may be appointed by the directors. *See* RSA 293-A:8.40 (Supp. 1993). Thus, the respondent's spouse appears to serve as an officer of the corporation and the operating manager at the pleasure of the respondent. *See* RSA 293-A:8.43(b) (Supp. 1993).

■ In addition to the control of the corporation, other facts indicate a clear link or nexus between the respondent and the corporation. In this case, the respondent and the corporation share office space, and five people who are employees of the corporation also serve as employees of the respondent in the conduct of his or her law practice (the employees spend approximately twenty percent of their time working for the corporation and eighty percent of their time working for the respondent). Further, in connection with the corporation's business, the respondent is occasionally retained to draft deeds or other instruments for the parties involved in a particular closing. The totality of the circumstances involving this attorney and this corporation leads us to find that a substantial nexus exists between the respondent and the corporation.

■ Accordingly, we hold that the financial records of the corporation are subject to audit under Supreme Court Rules 50 and 50-A.

*So ordered.*

All concurred.